**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------x
**MURIEL JACKSON,**

                              **Petitioner,**                                          08 CV 0214

   **- against -**

                                                                    <u>**MEMORANDUM AND ORDER**</u>

**MICHAEL J. ASTRUE, Commissioner of**
**Social Security,**

                              **Respondent.**
--------------------------------------------------------x

**GERSHON, United States District Judge:**

In this action to review a decision of the Commissioner of Social Security ("The Commissioner") finding Muriel K. Jackson "not disabled" and therefore not entitled to Disability Insurance benefits ("DIB") or Supplemental Security Income ("SSI"), plaintiff's motion for judgment on the pleadings is granted, and the Commissioner's motion is denied. The case is remanded to the Administrative Law Judge ("ALJ") for further administrative proceedings. Remand is appropriate principally because the ALJ failed to develop the administrative record, instead relying almost exclusively on the report of a non-physician state disability analyst.[1]

It is axiomatic that social security proceedings are non-adversarial and that the ALJ has an affirmative duty to develop the record—especially where, as here, the claimant is *pro se*. "This duty requires that the ALJ investigate the facts and develop the arguments both for and against granting benefits." *Tessier v. Astrue*, No. 08-cv-0779, 2010 WL 419969, at *2

---

[1] The disability analyst noted that Ms. Jackson's file did not contain an examining source statement. Nonetheless, the analyst found that Ms. Jackson exhibited only minor limitations. She could occasionally lift and/or carry 20 pounds and frequently carry 10. She was found able to sit, stand, or walk for 6 hours of an 8-hour workday, and to have unlimited ability to push/pull. The analyst reported that Ms. Jackson could not climb or balance, but that she had no other postural limitations, no manipulative limitations, no visual limitations, and no environmental limitations. In addition, insofar as the ALJ relied on the disability report as evidence that Ms. Jackson could perform jobs available in the national economy, such reliance was improper without evidence from a vocational expert.

(W.D.N.Y. Jan. 29, 2010). The regulations mandate that the ALJ make "every reasonable effort" to obtain "medical reports from a claimant's sources." *Id.* This obligation "includes making an initial request, and then if needed, one follow up request ten to twenty days later if the medical records ha[ve] not yet been received." *Id.* (quoting 20 C.F.R. § 404.1512(d)(1) (internal quotation marks omitted)).

Here, the record of Ms. Jackson's infirmities, a seizure disorder, hypertension, and cardiomyopathy—each of which was found severe by the ALJ—is indisputably sparse. It contains no RFC evaluations from treating physicians, no records or notes of examination by any consulting physician, and limited results of medical testing. At the hearing, the ALJ did not invite the testimony of a medical or vocational expert. Nor did he reach out to Jackson's treating physicians to urge them to file RFC evaluations or to testify. The ALJ did send a letter to Dr. Parikh, the doctor who most frequently treated plaintiff, informing him that Ms. Jackson had applied for benefits, but the letter requested only that Dr. Parikh submit all medical records, which it appears that he did. At no time did the ALJ request that Dr. Parikh—or any other treating physician—complete an RFC evaluation.

The ALJ's duty to the *pro se* claimant was particularly significant in this case in light of the nature of her medical complaints, including increasing forgetfulness, dizziness, and other mental limitations. In order to accommodate *pro se* claimants who do not understand what the process requires of them, an ALJ can keep a record open in order to provide a claimant with time to substantiate her claims. *See, e.g.*, *McKinzie v. Astrue*, No. 07-cv-733, 2010 WL 276740, at *5 (W.D.N.Y. Jan. 20, 2010) (quoting ALJ decision). This option is of a piece with the ALJ's duty to develop the administrative record. Here, the ALJ did not ask claimant if she would be able to procure further documentation if she had more time; nor did he urge Jackson to collect the RFC

evaluations that could have proven helpful to her. That Jackson may not have had the wherewithal to herself ask for additional time to gather information should have been evident to the ALJ from her confusion and lack of comprehension at the hearing, and at her previous appearance before him. (Tr. 222-231; 232-257.)

The case must therefore be remanded to the Commissioner so that the ALJ may fulfill his duty to develop the record. Upon remand, a new evaluation of the credibility of plaintiff and her friend Ms. Boykin must also be made. Nothing in the record suggests any basis for discounting the testimony of Ms. Boykin, a state-certified direct care worker who previously worked for the Office of Mental Retardation and Developmental Disabilities, and who testified that she moved into Ms. Jackson's home because of Jackson's seizures and other health issues. As to plaintiff, the ALJ simply made a conclusory rejection of her testimony. He also misstated that testimony, suggesting that she was more functional than her testimony indicated.

Upon remand, the ALJ also should obtain RFC assessments from Dr. Parikh and Ms. Jackson's other treating physicians, which will permit the ALJ to properly address the issues Ms. Jackson raises in her briefs, including the severity of her seizure disorder, the seriousness of her hypertension and cardiomyopathy, any mental limitations, and the side effects of her many medications, and to decide whether, singly or in combination, her impairments render her disabled from working.

**SO ORDERED.**

_____/s/ Nina Gershon_____
**NINA GERSHON**
**United States District Judge**

Dated: March 8, 2010
        Brooklyn, New York